IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY ZORZETTO-KAMMEYER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 20-1443 |
| ANDREW SAUL, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**Timothy R. Rice**  **March 26, 2021**
**U.S. Magistrate Judge**

Plaintiff Ashley Zorzetto-Kammeyer alleges the Administrative Law Judge ("ALJ") who found she was not entitled to Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) erred by: (1) not crediting the affidavits of her family members and rejecting her testimony; and (2) failing to explain how the stress of working eight hours per day/five days per week would affect her functioning. See Pl. Br. (doc. 19). Because the ALJ failed to support his credibility determinations with substantial evidence, I will remand.

Kammeyer testified that her energy level sunk to unusual lows in late 2015, she experienced odd memory lapses, and was found sleeping in her postal truck during a shift. R. at 46-47. She was hospitalized for two days after fainting in her shower in December 2015, and was subsequently diagnosed with narcolepsy, a condition that causes sudden and unpredictable somnolence, and later also cataplexy, intermittent temporary paralysis brought on by strong emotion. Id. at 46, 48-49. Kammeyer testified that she could no longer drive or be left alone with her children, which forced her family to move in with her in-laws. Id. at 50. She submitted affidavits from multiple family members corroborating her testimony after the ALJ refused to hear their testimony live. Id. at 39, 258-62.

The ALJ rejected the affidavits. He dismissed Kammeyer's testimony and her family's statements, describing them as "not consistent with the preponderance of the observations by medical doctors and other medically trained professionals in this area." Id. at 25. He cited medical records showing that: (1) Kammeyer left the hospital against medical advice after her December 2015 fall, declining a work-up from neurology; (2) she had shown up to one medical appointment in May 2016 on her own with an eight-month-old baby; (3) she originally reported that she felt tired at times but refreshed after a 20-minute nap; and (4) "her symptoms improved with treatment following the May 2016 sleep study" despite "some exacerbations since that initial sleep study, likely caused by stress and anxiety." Id. at 23. He noted that: (5) most of her increased symptomology was related to stress; (6) most of her scans are normal; and (7) despite recommendations to do so, she had not seen a psychologist or behavioral therapist. Id. at 24.

When determining the consistency of a claimant's allegations, an ALJ must support his determination with substantial evidence that bears a legitimate nexus to the findings as demonstrated by inconsistent statements, contradictory evidence, or inherently improbable testimony. S.S.R. 16-3p, 2016 WL 1119029, at *2 (March 16, 2016); accord St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir. 2005) (credibility determinations should not be reversed unless "inherently incredible or patently unreasonable" as long as the ALJ considers all relevant factors and explains his decisions). The ALJ may not make speculative inferences from medical evidence, see, e.g., Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), and cannot reject evidence for no reason or for the wrong reason, Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009). He must explain the evidence supporting his findings and the reasons for discounting the evidence he rejects. Id. at 505-06. This permits a reviewing court to

determine whether significant probative evidence was improperly rejected or simply ignored. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

Although some of the ALJ's observations are accurate, others are wrong or misleading. For example, it is true that Kammeyer showed up for an appointment on May 10, 2016 on her own with a baby in a stroller, R. at 570, contradicting her testimony that she can never be left alone with her kids, id. at 50. It is also true that many of her scans were normal. See e.g., id. at 328 (normal EEG[1]), 372-73 (normal ECG[2]), 572 (description of normal sleep study).

Nevertheless, although Kammeyer declined to be evaluated by neurology when she left the hospital on December 9, 2015 "against medical advice," she left only due to a family emergency at home. Id. at 276. As instructed, she followed up with a neurologist shortly afterwards. Id. at 375. The ALJ improperly used this episode to discredit her claims. Diaz, 577 F.3d at 505.

Similarly, although she mentioned on May 10, 2016 feeling refreshed after 20-minute naps, she qualified her report by explaining that the nap permitted her to maintain normal activity for only one to two hours. Id. at 571. Located in the "inappropriate sleep" section of her medical record, this statement is not inconsistent with her testimony and affidavits.

To the extent that the ALJ suggested Kammeyer had never sought mental health treatment, his finding is wrong. Kammeyer was in treatment from 2013 through 2016. Id. at 399-408. Subsequent records do not suggest that her uncontrolled medical condition was related

---

[1]   An EEG or encephalogram is a laboratory test that produces a graph depicting the brain's electrical activity. Dorland's Illustrated Medical Dictionary (32nd ed. 2012) ("Dorland's") at 600.

[2]   An ECG or electrocardiogram is a laboratory test that produces a graph depicting the heart's electrical activity. Dorland's at 599.

to any failure to follow recommendations and seek mental health care.  Rather, Kammeyer's records document a history of regularly seeking mental health care, including psychiatric medication.  That care was transferred to narcolepsy-focused specialists when it was determined that the symptoms for which she had sought mental health treatment (such as depression, anxiety, and low energy) were related to her narcolepsy.  See, e.g., id. at 850.  The ALJ missed this subtle, but significant, distinction and improperly used it to discredit her claims.

Although the ALJ accurately noted that most of Kammeyer's "break through" cataplexy episodes were related to stress, see, e.g., id. at 566 (noting symptoms had reduced with reduction of stress), it is unclear why he weighed this against Kammeyer's credibility.  His decision to do so is perplexing especially when some of that stress was caused by other symptoms which were either endemic to her condition or caused by medication side effects.  Compare, e.g., id. at 847 (family visit to sleep doctor to discuss concern over dangerous parasomnias) with id. at 843 (reduced stress once medication exacerbating parasomnias was changed).  It is unclear if any of the limitations in the ALJ's residual functional capacity are designed to accommodate her condition's sensitivity to stress or how the ALJ reached his determination that she could maintain functionality despite the stress of full-time work.  Id. at 22.

Further, the ALJ improperly determined that Kammeyer's condition improved after her May 2016 sleep study.  Although her functionality began to slowly improve with increasing doses of a medication called Xyrem, it started to deteriorate in September 2016.  Id. at 567.  When the Xyrem was increased even more, id., she experienced increased reports of parasomnias and a "worsening clinical picture."  Id. at 569.  She then had four seizures that fall, was hospitalized, and was taken off of Xyrem.  Id. at 515.  She then began a new course of medication, which was described as "fairly" successful as long as she was not under stress.  Id. at

850. Kammeyer testified that her medications only work for short periods and then her symptoms worsen, resulting in a renewed quest for sustainable treatment. Id. at 50. The medical records substantiate her testimony, not the ALJ's conclusions.

    Additional Claims

Because I remand this case based on the ALJ's failure to properly evaluate the consistency of Kammeyer's claims with the medical record, I do not address her additional claims. See Steininger v. Barnhart, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug, 24, 2005) (not addressing additional arguments because ALJ may reverse his findings after remand).

An appropriate Order accompanies this Opinion.